**WATERS CORPORATION and Waters Technologies Corporation, Plaintiffs,**

v.

**HEWLETT–PACKARD COMPANY and Hewlett–Packard GMbH, Defendants.**

**No. Civ.A. 97–40178–NMG.**

United States District Court, D. Massachusetts.

March 26, 1998.

John L. Welch, Dike, Bronstein, Roberts & Cushman, Boston, MA, for Plaintiffs.

Brian A. Davis, Kevin P. Light, Choate, Hall & Stewart, Boston, MA, Timothy E. DeMasi, Jonathon A. Marshall, Pennie & Edmonds LLP, New York City, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

On September, 16, 1997, the plaintiffs, Waters Corporation and its subsidiary, Waters Technologies Corporation (collectively "Waters"), brought this action for a declaratory judgment that certain patents owned by the defendants, Hewlett–Packard Company and its subsidiary, Hewlett–Packard GmbH (collectively "Hewlett–Packard"), are invalid and are not infringed by Waters' products.

Pending before this Court are the motions of the defendants to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

Specifically, Hewlett–Packard alleges that there is no "actual controversy" between the parties because Waters had no reasonable apprehension of suit when the complaint was filed and, therefore, fails to satisfy the jurisdictional prerequisites for bringing an action under the Declaratory Judgment Act, 28 U.S.C. § 2201. *See Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 887 (Fed.Cir.1992) ("To constitute an actual controversy, the plaintiff has the burden of establishing by a preponderance of the evidence ... that it has a reasonable apprehension that it will be sued.")

Alternatively, Hewlett–Packard urges this Court to exercise its discretion under the Declaratory Judgment Act to dismiss this action on the ground that the complaint was filed for the improper purpose of obtaining a more favorable bargaining position in ongoing licensing negotiations.

**I. The Relevant Facts[1]**

Waters and Hewlett–Packard compete in the market for laboratory instrumentation, including High Performance Liquid Chromatography ("HPLC") Systems. Hewlett–Packard, which manufactures a variety of products including computers and computer peripherals, owns over 4,400 patents and has been involved as the plaintiff in approximately eight patent actions over the past 23 years.

Among the patents owned by Hewlett–Packard are two United States patents for certain pumping technology which may be incorporated as a component of HPLC Systems. In 1996, Waters unveiled its new product line, the Alliance HPLC System, which incorporates the pumping technology that is the subject of this declaratory judgment action.

1. The following facts, most of which are undisputed, are supported by affidavits and documentary evidence submitted to this Court. *See Indium Corp. of America v. Semi–Alloys, Inc.,* 781

A. *Communications Prior to Commencement of this Action*

Before Waters filed its complaint, the parties exchanged the following communications:

1. In a letter dated July 1, 1997, counsel for Hewlett–Packard wrote to the president of Waters concerning the pumps used in one of Waters' product lines, the Alliance system:

> Our review of your products leads us to conclude that you require a license under [certain] HP patents. We would like to draw your attention, for example, to claims 1, 11 and 12 of EP 309596 and to claim 8 of US 5,108,264. Copies of the issued patents are enclosed for your information.
>
> We ask for your cooperation in the amicable resolution of the matter and look forward to your response by August 8, 1997.

2. In a letter dated August 8, 1997, counsel for Waters replied:

> We are presently reviewing and studying the issues raised in your letter. We apologize that we are unable to respond at this time. We will be able to discuss this matter shortly, no later than September 5, 1997.

3. In a faxed letter dated August 20, 1997, counsel for Hewlett–Packard continued the dialogue:

> Thank you for your telefax of August 8, 1997. We look forward to your early response in this matter.
>
> I will also be available for a telephone conversation on August 21, 26–28, or on September 1....

4. In a letter dated September 5, 1997, counsel for Waters replied:

> After reviewing the patents and relevant file histories, and conferring with outside patent counsel, we have concluded that we do not require a license, as no Waters products fall within the scope of any valid claims of the referenced patents. Waters does not intend to incorporate

F.2d 879, 884 (Fed.Cir.1985) (noting that, in deciding a Rule 12(b)(1) motion, the court can consider evidence outside the pleadings).

any technology covered by the referenced patents in any future Waters products. Furthermore, our review of the prosecution histories raises several questions as to the proper scope of coverage of certain of the referenced patents. In any event, Waters does not desire, nor does it require a license under any of the reference [sic] patents.

If you feel strongly otherwise we are willing to consider your written detailed position regarding claims of the referenced patents as you believe they relate to the Waters Alliance systems.

On September 16, 1997, Waters commenced this action when it filed its complaint in this Court.

### B. *Communications Following the Commencement of this Action*

The parties' correspondence from September through the end of December, 1997, reflects ongoing settlement negotiations in the shadow of four litigations commenced by Waters:

1. Waters postponed serving the defendants with its complaint in this case and, instead, in a letter dated October 9, notified Hewlett–Packard that it had initiated a declaratory judgment action in the District of Massachusetts as well as patent revocation proceedings in France, Germany and Great Britain. With respect to a possible settlement, that letter stated:

> In order for Waters to agree to discontinue these actions and further agree that they would not be recommenced, Hewlett–Packard would have to give appropriate, sufficient and expeditious indications that they will not directly or indirectly assert any patent or other intellectual property right against the Waters Alliance HPLC Systems.

2. In an interchange on October 28 and 29, 1997, Hewlett–Packard sought and Waters granted permission to extend deadlines to file responsive pleadings in the action in Great Britain.

3. Letters of October 31 and November 5, scheduled a settlement discussion for November 11, 1997.

4. In a letter dated December 8, 1997, Waters detailed its argument that Hewlett–Packard's European patent is invalid and concluded:

> ... I would suggest settlement along the general terms outlined in my letter of October 9, 1997. Waters has little to gain by delaying resolution of this matter either by settlement or in the courts. If we are unable to demonstrates [sic] progress on settlement discussions, Waters will pursue litigation aggressively. If you wish to renew our settlement discussions, please call me to arrange a convenient time.

5. On December 11, the parties exchanged letters to schedule settlement conversations, and Waters informed Hewlett–Packard that, "[i]n an effort to save Hewlett–Packard the expense of filing an answer," it had postponed serving the complaint in this declaratory judgment action as long as it could under the rules of procedure but would serve that complaint during the first week of 1998.

6. On December 12, the parties exchanged letters in which Hewlett–Packard requested and Waters declined a further extension of the deadline to file responsive pleadings in the action in Great Britain.

7. In a telephone conversation on December 16, Waters asked Hewlett–Packard for a settlement proposal.

8. In a letter dated December 23, Hewlett–Packard made a concrete settlement offer wherein Waters would pay a 3–5% royalty on the selling price of Waters Alliance Systems and would publish a notice of the Hewlett–Packard patent in marketing materials for those Systems.

9. In a letter dated December 24, Waters rejected that offer, reiterated its prior settlement terms, namely that Hewlett–Packard provide a written covenant not to enforce its patents, and added that Hewlett–Packard should reimburse it for its attorneys fees.

Waters served its complaint on the Hewlett–Packard parent and subsidiary on January 15 and February 19, 1998, respectively. After receiving the complaint, the defendants

filed their respective motions to dismiss on February 2 and March 4, 1998.

## II. Subject Matter Jurisdiction Under the Declaratory Judgment Act

### A. The Legal Standard

Under 28 U.S.C. § 2201, jurisdiction in a declaratory judgment action is proper only if there exists an "actual controversy" between the parties. 28 U.S.C. § 2201; *see Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 272–73, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ("[T]he facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").

■ In order to decide a Rule 12(b)(1) motion, the court must examine the facts existing at the time the complaint is filed to determine whether an "actual controversy" existed at that time. *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988); *see also Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631, 635 (Fed.Cir.1991) ("[L]ater events may not create jurisdiction where none existed at the time of filing."). A complaint for declaratory judgment in a patent case fulfills the "actual controversy" requirement if 1) the plaintiff actually produced or prepared to produce the allegedly infringing device and 2) the defendant's conduct created "an objectively reasonable apprehension" on the part of the plaintiff that the defendant will initiate suit if the allegedly infringing activity continues. *See Spectronics Corp.,* 940 F.2d at 634; *Goodyear Tire & Rubber Co. v. Releasomers, Inc.,* 824 F.2d 953, 955 (Fed.Cir.1987).

■ With respect to the second prong of the "actual controversy" test, where the defendant makes an express charge of infringement, "there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more." *See Arrowhead Industrial Water, Inc.,* 846 F.2d at 736. Absent an express charge of infringement, however, the Court must look to the "totality of the circumstances" to determine whether the defendant's conduct indicated its intent to enforce the patent and thereby created a "reasonable apprehension" of patent litigation on the part of the plaintiff. *See Shell Oil Co.,* 970 F.2d at 888; *Arrowhead Industrial Water, Inc.,* 846 F.2d at 736.

■ While the possibility of a lawsuit always looms in the background of patent negotiations, the Court applying the "actual controversy" test must draw the "sometimes subtle line between cases in which the parties have adverse interests and cases in which those adverse interests have ripened into a dispute that can properly be deemed a controversy." *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 811 (Fed.Cir.1996).

■ On the one hand, a party who may be liable for infringement "should not be subject to manipulation by a patentee who uses careful phrases in order to avoid explicit threats, thus denying recourse to the courts while damages accrue." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,* 57 F.3d 1051, 1053 (Fed.Cir.1995); *see also EMC Corp.,* 89 F.3d at 811–12 (emphasizing the court's obligation to look beyond the form or particular "magic words" used by the parties to the substance of their communications).

■ On the other hand, the Federal Circuit has consistently found that neither a patentee's offer of a license nor its attempt to negotiate a license is enough to create an actual controversy. *See, e.g., EMC Corp.,* 89 F.3d at 811 ("A patentee's offer of a license, without more, is insufficient to establish the predicate for declaratory judgment jurisdiction, ... and merely 'proposed or ongoing license negotiations' are likewise in sufficient...."); *Phillips Plastics Corp.,* 57 F.3d at 1053 ("The offer of a patent license does not create an actual controversy."); *Indium Corp. of America,* 781 F.2d at 883 (finding that "a mere offer of a license ... taken together with [the parties'] litigation history" was not a sufficient basis for declaratory judgment).

### B. Analysis

■ In applying the "actual controversy test" to the present case, this Court must determine whether, on September 16, 1997,

Waters had an "objectively reasonable apprehension" that Hewlett–Packard would file suit for patent infringement.[2] Because Hewlett–Packard did not expressly charge infringement or threaten litigation, this Court must look to the "totality of the circumstances."

· Hewlett–Packard's relevant conduct includes 1) a letter stating that it had concluded that Waters required a license and requesting a response within a month's time and 2) a letter acknowledging Waters' need for more time to assess the licensing issue and offering alternative dates to begin licensing discussions. Neither the tone nor the content of those letters suggests a threat of litigation.

Indeed, Waters' response on September 5, 1997, which is the last pre-filing communication between the parties, conveys the impression that Waters did not fear litigation and was prepared to enter negotiations. In that letter, Waters 1) establishes its bargaining stance that it does not need a license, 2) invites further discussion only "if you feel strongly," thereby leaving room for Hewlett–Packard to abandon its prior position that Waters required a license, and 3) manifests a willingness to consider Hewlett–Packard's "written detailed position."

The facts of this case are reminiscent of the facts described by the Federal Circuit Court of Appeals in *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051 (Fed.Cir.1995). In that case, the defendant-patentee, Kato, had informed Phillips that one of its products was "covered by" Kato's patent and invited Phillips to take a license under that patent. Phillips responded that no license was necessary because the patent was invalid and subsequently became involved as a protester in Kato's attempt to have the patent reissued. After Kato succeeded in obtaining the reissuance of the patent, it once again contacted Phillips, offered a license and requested information to assist it in developing a licensing proposal. Rather than responding, Phillips filed an action for declaratory judgment. *See* 57 F.3d

at 1052. Commenting that, "[w]hen there are proposed or ongoing licensing negotiations, a litigation controversy normally does not arise until the negotiations have broken down," the Federal Circuit affirmed the district court's dismissal for lack of subject matter jurisdiction on the ground that the plaintiff had no "reasonable apprehension of suit." *Id.* at 1053–54.

Waters attempts to distinguish *Phillips Plastics* on the ground that, when Phillips asserted that Kato's patent was invalid, Kato "went away and got its patent reissued." Because Hewlett–Packard did not go away within days of receiving Waters' position statement, Waters contends it had a "reasonable apprehension of suit." The factual distinction amplified by Waters is, however, immaterial because the court in *Phillips Plastics* did not base its dismissal upon Kato's initial efforts to reestablish its patent rights but rather focused on Kato's later attempts to engage Phillips in licensing negotiations. *See id.* at 1053 (characterizing Kato's attempt to conduct negotiations for a license as "commercial activity," not a threat of suit).

In addition, Waters argues that, when viewed in light of Hewlett–Packard's litigious reputation, the statement, "[o]ur review of your products leads us to conclude that you require a license," is tantamount to an expression of intent to sue. In order to substantiate the claim that Hewlett–Packard was a litigious adversary, counsel for Waters states in his affidavit that Hewlett–Packard was known to him and his client as:

> a litigious competitor that vigorously asserted its patents and had numerous patent litigations pending [and that a] search conducted at my direction in early September, 1997 covering HP-owned patents indicated thirty-six (36) pending patent litigations involving HP and its patents.

It is significant, however, that Waters' supporting documentation, a computer printout of those 36 patent infringement actions filed over the past 23 years, in fact, lists only 17

---

**2.** The parties do not dispute that Waters has met the first prong of the "actual controversy test" by producing its Alliance HPLC System, and this

Court, therefore, focuses only on the second prong of that test.

*different* cases of which only eight identify Hewlett–Packard as a plaintiff.

Considering that Hewlett–Packard owns more than 4,400 patents, the fact that it has sued on eight unrelated patents in 23 years hardly establishes litigiousness sufficient to convert licensing negotiations into a threat of suit. *See Indium Corp. of America,* 781 F.2d at 883 (holding that, where a patentee had previously sued two competitors for infringement of certain patents and then sent the plaintiff a letter offering it an opportunity to discuss a license under those patents, the plaintiff had no reasonable apprehension of litigation); *CAE Screenplates, Inc. v. Beloit Corp.,* 957 F.Supp. 784, 792 (E.D.Va. 1997) ("Prior litigation against parties unconnected to the declaratory judgment plaintiff, standing alone, cannot precipitate an actual controversy.").[3]

Finally, Waters contends that, because Hewlett Packard had "flatly asserted" that a license was required and Waters had drawn the contrary conclusion, a "controversy was born." Yet Waters' subjective determination that negotiation would be futile does not constitute an "objectively reasonable apprehension of suit." *See BP Chemicals Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 980 (Fed. Cir.1993) ("[I]t is the objective words and actions of the patentee that are controlling [and] a subjective apprehension is insufficient without objective substance."); *see also Phillips Plastics,* 57 F.3d at 1053–54 ("The 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension."); *CAE Screenplates, Inc.,* 957 F.Supp. at 791 ("[T]he mere existence of an adversely held patent does not create objective, reasonable apprehension of suit."). Because this Court finds that Waters had no such objectively reasonable apprehension of suit, it will dismiss the present declaratory judgment action for lack of subject matter jurisdiction.

## III. Discretion Under the Declaratory Judgment Act

■ Even if subject matter jurisdiction were proper in the present case, this Court would have discretion to decline to exercise such jurisdiction under the Declaratory Judgment Act. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) ("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.") A district court may exercise that discretion so long as it acts "in accordance with the purposes of the Declaratory Judgment Act and the principles of sound judicial administration." *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 814 (1996).

In *EMC Corp. v. Norand Corp.,* 89 F.3d 807 (Fed.Cir.1996), the Federal Circuit Court of Appeals affirmed the dismissal of a declaratory judgment action by District Judge Robert Keeton where the plaintiff had filed suit during patent licensing negotiations in order to improve its bargaining posture in those negotiations. *See id.* at 810, 815 (Fed. Cir.1996). In that case, the patentee-defendant was in the process of negotiating with several potential licensees, including the plaintiff, when plaintiff's management decided to file suit "to protect themselves" before continuing discussions. *Id.* at 815.

The Federal Circuit Court of Appeals contrasted the plaintiff's purpose (to enhance its bargaining power) with the purpose of the Declaratory Judgment Act, which is to "enable a person who is reasonably at risk because of an unresolved dispute to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Id.* (quoting *BP Chemicals Ltd.,* 4 F.3d at 977.) Finding that the plaintiff's tactical measure was at odds with the purpose of the Declaratory Judgment Act,

---

**3.** Waters' reference to its own history of conflict with Hewlett–Packard is equally unavailing. The record reveals only that, in 1984, Waters' parent, Millipore Corporation, accused Hewlett–Packard of infringing a Waters patent. Because Waters initiated that interaction, that "history" fails to show Hewlett–Packard's vigorous assertion of patent rights. Furthermore, any conflict that may have occurred 13 years ago is irrelevant to an "actual controversy" between the parties at the time the present action was filed.

**174**

that Court affirmed Judge Keeton's dismissal on the ground that allowing the declaratory judgment action to proceed would encourage parties in negotiations to misuse that judicial remedy as a tactical maneuver. *Id.* at 810.

 The same policy concerns which motivated the court in *EMC Corp.* apply in this case. As Waters' communications with Hewlett–Packard following the filing of this complaint demonstrate, in reaction to a single communication by Hewlett–Packard (the letter of July 1, 1997), Waters launched a fourfront attack in Great Britain, France, Germany and the United States in an effort to persuade Hewlett–Packard to relinquish its patent rights. In particular, the letters of October 9, December 8 and December 24, 1997, made it clear that Hewlett–Packard would be forced either to renounce its patent rights or face expensive litigation in four wide-spread courts. Waters thereby foreclosed any non-combative exploration of the relationship between Hewlett–Packard's patents and Waters' Alliance HPLC Systems. *See Davox Corp. v. Digital Systems International, Inc.,* 846 F.Supp. 144, 148 (D.Mass. 1993) (dismissing a declaratory judgment action where entertaining that action would be "inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources.")

As a result of Waters' filings, Hewlett–Packard would be forced to choose between relinquishing its potential licensing rights against Waters and absorbing the litigation costs and risk of adverse rulings that could jeopardize its patent rights. *See EMC Corp.,* 89 F.3d at 810 (describing the effect on the defendant of the plaintiff's tactical filing of a declaratory judgment action).

Because Waters' actions are inconsistent with the purpose of the Declaratory Judgment Act and with public policy favoring extrajudicial dispute resolution, even if this Court had subject matter jurisdiction, it would dismiss this action rather than reward Waters' use of a judicial remedy to obtain a more favorable bargaining position in its negotiations with Hewlett–Packard.

**ORDER**

For the foregoing reasons, the motions of the defendants to dismiss (Docket Nos. 4, 12 and 16) are **ALLOWED.**

So ordered.