Tactical Software v. Digi            CV-03-166-M    10/16/03
                        UNITED STATES DISTRICT COURT

                          DISTRICT OF NEW HAMPSHIRE


Tactical Software, LLC,
        Plaintiff

        v.                                    Civil No. 03-166-M
                                              Opinion No. 2003 DNH 176
Digi International, Inc.,
        Defendant


                          O R D E R


        Tactical Software designs and markets, among other things, a

product called "Serial I/P" - computer software known as a COM

port redirector.  Digi International is a provider of data

communications hardware and software and the holder of U.S.

Patent no. 6,047,319 (the "'319 Patent").  See Exhibit 3 to

defendant's memorandum.[1]  According to Digi, the '319 patent

"relates to the use of software on a host computer, for

connecting multiple terminals, communication ports or serial

ports of a multiport device server or terminal server across a

---

        [1]    Unless otherwise indicated, numbered exhibits are
attached to the affidavit of Cole Fauver, counsel for Digi,
submitted with defendant's memorandum in support of its motion to
dismiss (document no. 6), while lettered exhibits are attached to
the affidavit of Liisa Walsh, president of Tactical, submitted
with plaintiff's memorandum in opposition to motion to dismiss
(document no. 7).

general purpose network." Exhibit L, Complaint in patent infringement suit filed by Digi against Tactical, at para. 9.

In or about 2001, corporate counsel for Digi contacted Tactical, advising Tactical of the existence of the '319 patent, encouraging Tactical to "review the claims in the ['319] patent in view of the technology employed in [Tactical's] Serial I/P COM Port Redirector software," expressing Digi's willingness to license that technology to Tactical for a reasonable royalty, and stating that it assumed Tactical would respond within "fourteen (14) days as to whether [it was] willing to negotiate a license." Exhibit 4. Eventually, the parties began negotiating Tactical's possible licensing of that technology. But, Tactical came to believe that Digi was threatening patent enforcement litigation, so it filed this declaratory judgment action seeking, among other things, a judicial declaration that its products do not infringe the '319 patent and/or that the '319 patent is invalid.

Digi moves to dismiss Tactical's complaint claiming that, at the time Tactical filed suit, there was no actual "case or

controversy" between the parties and, therefore, this court lacks subject matter jurisdiction.[2]

## Standard of Review

"When faced with a motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1), Fed. R. Civ. P., the party asserting jurisdiction has the burden to establish by competent proof that jurisdiction exists." Stone v. Dartmouth College, 682 F. Supp. 106, 107 (D.N.H. 1988) (citing O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982)). Consequently, in response to Digi's motion to dismiss on grounds that there is no justiciable case or controversy, Tactical bears the burden of demonstrating that such a case or controversy actually exists. See Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 887 (Fed. Cir. 1992) ("To constitute an actual controversy, the plaintiff has the burden of establishing by a preponderance of the evidence,

---

[2] As noted above, shortly after Tactical filed this declaratory judgment action, Digi responded by filing a patent infringement suit against Tactical in the United States District Court for the District of Minnesota. See Exhibit L. That fact does not, however, alter the court's inquiry, which must focus on whether there was an actual case or controversy between the parties as of the date on which Tactical filed this suit.

3

inter alia, that it has a reasonable apprehension that it will be sued.") (footnote omitted).

In determining whether the party asserting the existence of subject matter jurisdiction has met its burden, the court "may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in [the] case." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996). See also Cedars-Sinai Medical Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993) ("In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony.").

**Discussion**

I.    Governing Law.

In support of its motion to dismiss, Digi says that when Tactical filed this action, there was no actual case or controversy between the parties and, therefore, the court may not properly exercise subject matter jurisdiction under the federal

Declaratory Judgment Act. That statute provides, in pertinent part, that:

> In a case of <u>actual controversy within its jurisdiction</u>, . . . any court of the United States, upon the filing of an appropriate pleading, <u>may</u> declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a) (emphasis supplied). Digi claims that, while the parties exchanged several letters during negotiations aimed at licensing Digi's technology to Tactical, "Digi had not once threatened Tactical with a lawsuit." Defendant's memorandum at 1. Consequently, Digi says there was "no controversy between the parties when Tactical filed this action - only ongoing invitations by Digi to license the '319 patent." <u>Id.</u> at 6. And, says Digi, "[a]bsent a justiciable controversy, this Court lacks jurisdiction over the subject matter of Tactical's Complaint, and should dismiss it." <u>Id.</u>

Digi is, at least in part, correct - there must be an actual case or controversy between the parties in order for one of them to properly invoke the Declaratory Judgment Act. As the court of appeals for this circuit has observed, "[a] federal court will

5

not start up the machinery of adjudication to repel an entirely speculative threat." PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 79 (1st Cir. 1996). See also Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 633-34 (Fed. Cir. 1991) ("[t]he existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction."). Consequently, the question presented by Digi's motion to dismiss is whether the letters it sent to Tactical, when viewed in the context of its other conduct toward Tactical (as well as other alleged infringers of the '319 patent), may properly be viewed as threatening litigation, or whether Tactical's asserted perception of such a threat was merely speculative. See generally Arrowhead Industrial Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988).

Tactical can meet its burden of demonstrating an actual "case or controversy" by satisfying each prong of a two-part test:

> As applied to declarations of patent rights and relationships, for an actual controversy more is required than the existence of an adversely held patent. Thus in patent litigation there has evolved a pragmatic two-part test for determining declaratory justiciability. There must be both (1) an explicit threat or other action by the patentee, which creates a

6

reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993).  Importantly, however, a defendant need not explicitly threaten litigation for a plaintiff to develop a reasonable apprehension of litigation.

The reasonableness of a party's apprehension is judged using an objective standard.  An examination of the totality of the circumstances must be made to determine whether there is a controversy.  Although the best evidence of a reasonable apprehension of suit comes in the form of an express threat of litigation, an express threat is not required.  To invoke the court's declaratory judgment jurisdiction, a plaintiff must show more than the nervous state of mind of a possible infringer, but does not have to show that the patentee is poised on the courthouse steps.

Vanguard Research, Inc. v. PEAT, Inc., 304 F.3d 1249, 1254-55 (Fed. Cir. 2002) (citations and internal quotation marks omitted).

II.  The Record Evidence.

With regard to the second prong of the Federal Circuit's two-part test - present activity which could constitute

7

infringement - that element is plainly met insofar as Digi has alleged that Tactical is actively engaged in conduct that infringes the '319 patent. <u>See, e.g.,</u> Exhibit J ("Tactical Software's Serial I/P COM Port Redirector software infringes at least claims 1, 5, 6, 8, 15, and 16 of the '319 patent.").

In support of its assertion that it has also met its burden with regard to the first prong of that test - "reasonable apprehension" of suit at the time it filed this declaratory judgment action - Tactical points to the following. In November, 2000, Digi filed a patent infringement suit against Stallion Technologies, Inc., alleging infringement of the '319 patent based, in part, on Stallion's production of COM port redirector software. <u>See</u> Exhibit B. Then, in July, 2001, Digi filed a patent infringement suit against Lantronix, Inc., alleging infringement of the '319 patent based, in part, on Lantronix's sale of COM port redirector software. <u>See</u> Exhibit A. Tactical says it became aware of both suits shortly after they were filed (in fact, in the Lantronix litigation, Tactical was identified as a supplier to Lantronix of various products, including it's COM port redirector software, "Serial I/P").

8

In September, 2001, Digi wrote to Tactical, provided Tactical with a copy of the '319 patent, suggested that Tactical review the '319 patent "in view of the technology employed in your serial I/P COM Port Redirector software," and expressed its willingness to license the '319 technology to Tactical. Exhibit 4. By letter dated January 14, 2002, Tactical responded to Digi, denying that its Serial I/P product infringed the '319 patent and suggesting that the '319 patent might well be invalid. Exhibit 6. Then, in connection with its suit against Lantronix, Digi subpoenaed Tactical, seeking, among other things, the source code for its Serial I/P software. Exhibit C, request for production number 5. It also took the deposition of Tactical's president, Liisa Walsh, under Fed. R. Civ. P. 30(b)(6). Exhibit D.

Soon after that deposition, Digi ended its suits against Stallion and Lantronix (presumably by virtue of settlement) and outside litigation counsel for Digi contacted Tactical, writing: "As you are no doubt aware, Digi recently concluded its legal actions against Lantronix and Stallion regarding infringement of the '319 patent. Now that these litigations are resolved, we need to focus on the infringing activity of Tactical Software."

Exhibit H (emphasis supplied).  Later in that letter, Digi's counsel asserted that: "Tactical Software's product materials, as well as the recent deposition testimony of Liisa Walsh, confirm that Tactical Software is infringing the '319 patent in most, and perhaps all, customer applications. . . . Please let me know immediately if your client is prepared to discuss a license under the '319 patent."  Id.

Subsequently, counsel for Tactical contacted counsel for Digi asking that he identify which of Tactical's products allegedly infringe the '319 patent.  Exhibit I.  In a letter bearing the caption "Subject to Fed. R. Evid. 408," Digi's counsel responded.[3]  Specifically, counsel asserted that Tactical's Serial I/P COM port redirector software "infringes at least claims 1, 5, 6, 8, 15 and 16 of the '319 patent . . . Tactical Software's other products may also be implicated by the

_____

[3]     Rule 408 of the Federal Rules of Evidence relates to the admissibility at trial of settlement negotiations and provides, among other things, that "[e]vidence of conduct or statements made in compromise negotiations is . . . not admissible."  Presumably, then, counsel for Digi wished to make clear that: (1) he viewed his letter as an "offer to compromise" Digi's infringement claims against Tactical; and (2) nothing contained in that letter would (or, perhaps more accurately, should) be admitted against Digi in any subsequent patent litigation between the parties.

'319 patent, to the extent they provide for control of remote serial ports as if the port[s] were local." Exhibit J. Tactical says its counsel did not immediately respond to Digi's letter and, instead, investigated Digi's claims and located additional prior art that Tactical believed invalidated the '319 patent.

In March, 2003, counsel for Digi again contacted Tactical, seeking a response to Digi's allegations of patent infringement and its invitation to discuss the terms of a licensing agreement. Exhibit K. Believing that it was "readily apparent that Digi would file a lawsuit if Tactical did not pay money," plaintiff's memorandum at 6, Tactical initiated this declaratory judgment action. Then, in May of 2003, Digi filed a patent infringement suit against Tactical in the United States District Court for the District of Minnesota, alleging that Tactical infringes the '319 patent.

Viewing the record evidence as a whole, Tactical was justified in having a "reasonable apprehension" that, if it did not agree to license the '319 technology from Digi, it would likely be the target of patent infringement litigation. First,

11

Tactical was aware that Digi was aggressively pursuing those entities it believed were infringing the '319 patent - Digi had, at a minimum, filed (and recently concluded) patent infringement actions against Stallion and Lantronix.

Additionally, in its letter of February 6, 2003, counsel for Digi: (1) invoked Digi's recent legal actions against Lantronix and Stallion and said, "we [now] need to focus on the infringing activity of Tactical Software"; (2) in so doing, specifically accused Tactical of infringing the '319 patent; and (3) discounted any claims that Tactical might raise regarding prior art and the potential invalidity of the '319 patent. Exhibit H.[4] Subsequently, in his letter of February 18, counsel for Digi identified exactly which claims of the '319 Digi alleged were infringed by Tactical's Serial I/P COM port redirector software. Exhibit J. He concluded that letter by saying, "We do not have a specific license proposal at this time. Terms will depend on how

---

[4] It is, perhaps, worth noting, that Digi contacted Tactical through Digi's outside litigation counsel, Robins, Kaplan, Miller & Ciresi, LLP, not its in-house counsel. It was that law firm that represented Digi in its lawsuits against both Stallion and Lantronix.

your client sells the products and sales volume, which we are prepared to discuss."  Id.

Digi places substantial weight on the concluding sentence of that letter.  While it is correct in pointing out that the "offer of a patent license does not create an actual controversy," Phillips Plastics v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051, 1053 (Fed. Cir. 1995), and that when licensing negotiations are ongoing, "a litigation controversy normally does not arise until the negotiations have broken down," id., those points are not entirely persuasive.  First, as discussed above, the court must consider the totality of the circumstances surrounding the parties' relationship to determine whether it has ripened into an actual case or controversy.

Moreover, pointing to the fact that the parties continue to negotiate Tactical's possible licensing of the '319 patent's technology is not particularly compelling since the presence of ongoing negotiations does not necessarily preclude the conclusion that there is a case or controversy.  For example, at least as of May 30, 2003 - the date on which Digi filed its patent

13

infringement complaint against Tactical - there has been an actual case or controversy between these parties, notwithstanding any ongoing settlement or licensing negotiations. Additionally, Digi's repeated charges (prior to its initiation of the infringement action) that Tactical's products infringe the '319 patent are sufficient to give rise to an actual case or controversy. See, e.g., Findwhat.com v. Overture Services, Inc., 2003 WL 402649 (S.D.N.Y. 2003) (concluding that although the parties had been engaged in licensing negotiations, defendant's express charge of patent infringement distinguished the case from Phillips, supra, and created a justiciable case or controversy).

Finally, Digi asserts that its recent history of aggressively pursuing alleged infringers of the '319 patent is not material to the inquiry into the existence of an actual case or controversy. The court disagrees. Plainly, Digi's recent litigation against at least two other alleged infringers of the '319 patent is part of the overall factual landscape that the court must consider when determining whether the "totality of circumstances" gave rise to a reasonable apprehension of litigation on the part of Tactical. Moreover, the facts

14

underlying the cases Digi cites in support of its position are readily distinguishable from those present in this case. For example, in Premo Pharm. Labs., Inc. v. Pfizer Pharm., Inc., 465 F. Supp. 1281 (S.D.N.Y. 1979), the plaintiff in that declaratory judgment action sought to establish its "reasonable apprehension" of litigation based largely on defendant's history of having filed 38 patent infringement suits within the prior 18 years. The court rejected that argument, noting that even if the defendant "has been a litigious plaintiff, its record in past suits does not by itself show that it has charged infringement of the patents challenged in this suit." Id. at 1283-84 (emphasis supplied). Here, however, Digi has, very recently, aggressively enforced what it perceives to be its rights under the very patent in question in this case.

Likewise the district court's opinion in Waters Corp. v. Hewlett-Packard Co., 999 F. Supp. 167 (D. Mass. 1998), provides little support for Digi's position. There the court noted that, "[c]onsidering that [defendant] owns more than 4,400 patents, the fact that it has sued on eight unrelated patents in 23 years hardly establishes litigiousness sufficient to convert licensing

15

negotiations into a threat of suit."  Id., at 173 (emphasis supplied).  Again, the facts in this case are readily distinguishable and little more need be said on that point.

Digi's conduct toward Tactical (as well as other alleged infringers of the '319 patent), particularly the tone and subject matter of the letters from its counsel (which specifically accused Tactical of infringing the '319 patent), is plainly sufficient to warrant Tactical's conclusion that, if it did not accede to Digi's proposal that it license the '319 patent's technology (on terms dictated by Digi), Digi would file a patent infringement suit.  See, e.g., Arrowhead Indus. Water, 846 F.2d at 736 ("If defendant has expressly charged a current activity of the plaintiff as an infringement, there is clearly an actual controversy, certainty has rendered apprehension irrelevant, and one need say no more.").

Taken as a whole, Digi's conduct left the unmistakable impression that Tactical faced a choice: agree to license the '319 patent's technology from Digi or face a patent infringement suit.  Notwithstanding Digi's claims to the contrary, that

16

implied threat is sufficiently clear and unambiguous to warrant the conclusion that an actual case or controversy existed between the parties when Tactical initiated this declaratory judgment action.  In short, as in Pioneer Healthcare, "[n]o competent lawyer advising [plaintiff] could fail to tell it that, based on the threatening letters and the surrounding circumstances, a [federal] suit was a likely outcome."  Pioneer Healthcare, 75 F.3d at 79.  See also EMC Corp. v. Norand Corp., 89 F.3d 807, 812 (Fed. Cir. 1996) ("An objective reader of [defendant's] letter could only conclude that [defendant] had already decided [plaintiff] was infringing its patents and that [defendant] intended to file suit unless it could obtain satisfaction without having to sue.").

**Conclusion**

Digi's recent conduct demonstrates a present intent to aggressively pursue those parties it believes are infringing the '319 patent and its willingness to pursue patent litigation if extra-judicial negotiations fail.  Having successfully dealt with both Stallion and Lantronix, Digi turned its attention to Tactical.  And, by (repeatedly) accusing Tactical of infringing

17

the '319 patent and demanding that Tactical promptly respond to its proposal to negotiate a license agreement, Digi's conduct was sufficient to create a justiciable "case or controversy" between the parties; a party in Tactical's position could not have helped but reasonably conclude that if it did not (or could not) agree to the terms of a licensing agreement with Digi, it would find itself on the receiving end of a patent infringement suit. Accordingly, the court has subject matter jurisdiction over Tactical's claims under the Declaratory Judgment Act. To the extent the court is vested with discretion not to exercise that jurisdiction, see 28 U.S.C. § 2201(a), it declines to exercise that discretion.

For the foregoing reasons, and for the reasons set forth in plaintiff's memorandum, defendant's motion to dismiss (document no. 6) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

October 16, 2003

cc:  Arnold Rosenblatt, Esq.
     Daniel J. Bourque, Esq.
     Edward A. Haffer, Esq.