USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT  ____________________ No. 94-1864 JOHN W. WANG, M. D., Plaintiff, Appellant, v. NEW HAMPSHIRE BOARD OF REGISTRATION IN MEDICINE, ET AL., Defendants, Appellees.  ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Paul J. Barbadoro, U.S. District Judge] ___________________  ____________________ Cyr and Boudin, Circuit Judges, ______________ and Keeton,* District Judge. ______________  ____________________ Vincent C. Martina for appellant. __________________ Daniel J. Mullen, Senior Assistant Attorney General, with whom _________________ Jeffrey R. Howard, Attorney General, was on brief. _________________  ____________________ June 6, 1995  ____________________  ____________________ *Of the District of Massachusetts, sitting by designation. CYR, Circuit Judge. John W. Wang, M.D., appeals from a CYR, Circuit Judge. _____________ district court judgment dismissing his claims for monetary and equitable relief relating to certain disciplinary proceedings conducted by the New Hampshire Board of Registration in Medicine, which culminated in the revocation of his license to practice medicine in New Hampshire. We affirm the district court judg- ment. I I BACKGROUND BACKGROUND __________ Wang practiced medicine for approximately sixteen years under a medical license issued by the Commonwealth of Massachusetts in 1967, then moved to New Hampshire in 1983 and resumed the practice of medicine under a newly-obtained New Hampshire medical license. On March 16, 1988, the Board of Registration in Medicine for the Commonwealth of Massachusetts ("Massachusetts Board") revoked Wang's medical license for professional misconduct.1 In light of the Massachusetts Board action against Wang, the New Hampshire Board of Registration in Medicine ("New Hampshire Board" or "Board") issued an order on July 20, 1988, suspending his New Hampshire medical license pursuant to the New Hampshire reciprocal revocation statute,2  ____________________ 1The charges and findings appear in Wang v. Board of Regis- ____ _______________ tration in Medicine, 537 N.E.2d 1216 (Mass. 1989). ___________________ 2The reciprocal revocation statute, N.H. Rev. Stat. Ann.  329:17-c (1984), in effect at the time provided: The board may summarily deny a license to, or revoke or restrict the license of, any person who has been subjected 2 and allowing him until August 26 to request an administrative hearing. Wang promptly obtained preliminary injunctive relief from a New Hampshire superior court, enjoining the suspension order pending a revocation hearing before the New Hampshire Board. The Board in turn withdrew its suspension order and, on August 11, 1988, ordered that Wang show cause why his New Hamp- shire license ought not be revoked on the ground that he had never informed the Board of the license revocation order issued by the Massachusetts Board. On October 5, 1988, the New Hamp- shire Board decided to investigate Wang's New Hampshire medical practice. Pending investigation by the New Hampshire Board, Wang appealed the Massachusetts Board license revocation order to the Massachusetts Supreme Judicial Court ("SJC"). Contemporaneously, Wang sought and on February 23, 1989, obtained a second New Hampshire superior court order, enjoining the New Hampshire Board from pursuing "any hearing the result of which might be revoca- tion of [Wang's] New Hampshire license based on the action of the Massachusetts Board . . . until such time as the matter in Massachusetts has been finally adjudicated in the [SJC]." Two months later on reconsideration the New Hampshire superior court vacated its injunction for lack of jurisdiction. The following week, the SJC upheld the Massachusetts Board license  ____________________ to disciplinary action related to professional conduct by the competent authority of any other jurisdiction. 3 revocation order.  On May 22, 1989, counsel was appointed by the New Hampshire Board to investigate Wang's New Hampshire medical practice. The investigation took over two years, followed by hearings commencing in July and ending in October, 1991. The Board found that in and of itself the unprofessional conduct which had prompted the Massachusetts Board to revoke Wang's medical license warranted revocation of his New Hampshire license. Further, the Board found that Wang's unreasonable withholding of information from the Board during its investiga- tion into his New Hampshire medical practice, and his failure even to demonstrate an attempt to address the professional deficiencies in his Massachusetts practice, combined "not only [to] justify, but [to] require reciprocal license revocation in New Hampshire." On March 5, 1992, the Board issued its written decision and order revoking Wang's New Hampshire medical license. Wang appealed the revocation decision to the New Hampshire Supreme Court, claiming deprivations of his due process rights under state and federal law, including alleged violations of the Board's own rules, regulations and enabling statutes, and asserting conflicts of interest and unfair prejudice on the part of Board members and its counsel. On August 26, 1992, the New Hampshire Supreme Court summarily affirmed the license revocation order, finding the New Hampshire Board decision neither unjust nor unreasonable, and that the appeal presented no substantial question of law. 4 Meanwhile, on November 22, 1991, before the New Hamp- shire Board's license revocation order ever issued, Wang had commenced the present action against the Board, its members and counsel, in the United States District Court for the District of New Hampshire. The federal complaint under 42 U.S.C. 1983 asserted claims for monetary relief and for temporary and perma- nent injunctive relief enjoining further disciplinary action by the Board; a judicial declaration that the Board's actions were fundamentally unfair and violative of Wang's right to due process of law; and an award of attorney fees against Board members and its counsel in their individual capacities. The federal district court stayed its proceedings pending a decision by the New Hampshire Supreme Court. All defendants moved to dismiss the federal action shortly after the New Hampshire Supreme Court summarily affirmed the New Hampshire Board's license revocation order. The district court dismissed the claims for monetary relief against the Board and its members, in their official capacities, on Eleventh Amendment immunity grounds. Later, the claims for monetary relief against Board members and its counsel, in their individual capacities, were dismissed on grounds of absolute immunity. Finally, on July 12, 1994, the district court entered summary judgment on the claims for injunctive relief against the Board, finding that it lacked subject matter jurisdiction to review the New Hampshire Supreme Court decision. Wang appealed. II II 5 DISCUSSION DISCUSSION __________ On appeal, Wang contends that the district court erred in dismissing his claims for monetary relief against the Board and its members in their official capacities; in sustaining the absolute immunity claims interposed by Board members and its counsel, acting in their individual capacities, in that these defendants had exceeded their respective adjudicative and prose- cutorial roles and would be entitled, at most, to qualified immunity under New Hampshire law; and in ruling that it lacked subject matter jurisdiction to afford prospective injunctive relief. A. Monetary Relief3 A. Monetary Relief _______________ 1. The Board and Board Members (Official Capacities) 1. The Board and Board Members (Official Capacities) _________________________________________________ As it is well settled "that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action," Johnson v. Rodriguez, 943 F.2d _______ _________ 104, 108 (1st Cir. 1991) (citing Will v. Michigan Dep't of State ____ ________________________ Police, 491 U.S. 58, 71 (1989)), cert. denied, 502 U.S. 1063 ______ _____ ______ (1992); see also Kaimowitz v. Board of Trustees, Univ. of Ill., ___ ____ _________ _________________________________ 951 F.2d 765, 767 (7th Cir. 1991) (finding that, as neither the state nor its "alter ego" (state university) is a "person" for section 1983 purposes, neither is subject to suit under section  ____________________ 3Rule 12(b)(1) dismissals for lack of subject matter jurisdiction are reviewed de novo, Hogar Agua y Vida en el __ ____ ___________________________ Desierto, Inc. v. Suarez-Medina, 36 F.3d 177, 181 (1st Cir. _______________ _____________ 1994), crediting all well-pleaded allegations and drawing all reasonable inferences favorably to the plaintiff. Murphy v. ______ United States, 45 F.3d 520, 522 (1st Cir. 1995). _____________ 6 1983), we affirm the dismissal of the claims for monetary relief against the Board and its members acting in their official capacities.  2. Board Members and Board Counsel (Individual Capacities) 2. Board Members and Board Counsel (Individual Capacities) _______________________________________________________ Immunity claims in section 1983 actions are governed by federal law. Martinez v. California, 444 U.S. 277, 284 n.8 ________ __________ (1980). Wang nonetheless contends that the Board members and its counsel, in their individual capacities, were entitled, at most, to "good faith" immunity (under New Hampshire law) from monetary liability under section 1983. As we discern no material distinc- tion between the quasi-judicial and prosecutorial functions performed by these defendants in behalf of the New Hampshire Board, and those performed by their Massachusetts Board counter- parts, the district court order dismissing these "individual capacity" claims was entirely proper. See Bettencourt v. Board ___ ___________ _____ of Registration in Medicine, 904 F.2d 772, 782-85 (1st Cir. _____________________________ 1990).  The Massachusetts Board members and its professional staff were held absolutely immune from suit in their individual capacities under section 1983, on the ground that these officials serve in quasi-judicial capacities "functionally comparable" to those performed by a state court judge. Id. at 783. As with the ___ Massachusetts Board, New Hampshire Board members weigh evidence and make factual determinations, N.H. Rev. Stat. Ann. 329:- 17(VI), determine sanctions, see id. 329:17(VII), and issue ___ ___ 7 written decisions in disciplinary actions. See id. 329:- ___ ___ 18(III).4  Although Wang attempts to differentiate between the two administrative tribunals on the ground that the New Hampshire Board assumed an "inquisitorial or investigative role" in this case by instigating and prosecuting the charges against him, the attempted distinction is without legal significance. State officials performing prosecutorial functions -- including their decisions to initiate administrative proceedings aimed at legal sanctions -- are entitled to absolute immunity as well. See Butz ___ ____ v. Economou, 438 U.S. 478, 515 (1978); see also Horwitz v. Board ________ ___ ____ _______ _____ of Medical Examiners, 822 F.2d 1508, 1515 (10th Cir.) (describing ____________________  ____________________ 4The New Hampshire Board is empowered to conduct disciplin- ary proceedings, and discipline licensees in appropriate cases, N.H. Rev. Stat. Ann. 329:2(II)(b), 329:17(I),(VI), and to appoint legal counsel and "such other assistants as may be required" in performing its administrative responsibilities, id. ___ 329:2(II)(c). It may initiate disciplinary proceedings on its own motion or upon a written complaint alleging professional misconduct. See id. 329:17(I), (VI). It may reprimand; limit, ___ ___ suspend or revoke medical licenses; assess administrative fines; and order treatment, counseling, continuing medical education and medical practice supervision. Id. 329:17(VII). Appeals from ___ its disciplinary rulings are taken to the New Hampshire Supreme Court, id. 329(VIII), under the procedures set forth in N.H. ___ Rev. Stat. Ann. 541.  The Massachusetts Board adjudicatory proceedings are con- ducted by a hearing officer, see Bettencourt, 904 F.2d at 773, ___ ___________ who makes all evidentiary and procedural rulings, and issues a "tentative decision" which the Massachusetts Board reviews, together with any objection filed by the respondent physician, before issuing its "final decision." See id. at 773-74. The ___ ___ Massachusetts Board accords "substantial deference" to all credibility determinations by the hearing officer, but may reject or revise any finding based on conflicting evidence. Id. Legal ___ rulings are reviewed de novo. Id. Appeals from Massachusetts __ ____ ___ Board decisions are taken to the SJC, which may set aside or modify board decisions on a finding that substantial rights have been prejudiced. Id. at 774. ___ 8 Colorado medical board officials' adjudicatory and prosecutorial role), cert. denied, 484 U.S. 964 (1987). Thus, New Hampshire _____ ______ Board counsel, like the Massachusetts Board professional staff, see Bettencourt, 904 F.2d at 785, is absolutely immune from suit, ___ ___________ in his individual capacity, based on his participation in partic- ular cases before the Board. See id.  ___ ___ Wang next argues that the New Hampshire Board members and its counsel were imbued with such "overwhelming malice and bad faith" that due process was not to be had at their hands. The allegation of malice and bad faith is founded principally on the New Hampshire superior court decision preliminarily enjoining further Board action entered on February 23, 1989, and vacated for lack of subject matter jurisdiction two months later.5 Even assuming a level of malice and bad faith suffi- cient to poison the New Hampshire Board proceedings contrary to the record evidence, as well as the New Hampshire Supreme Court decision the Board members and its counsel nonetheless  ____________________ 5In its February 23, 1989, order enjoining the Board disci- plinary proceedings, the superior court found that Wang had not been accorded due process, in that the Board had prejudged the outcome of its proceedings. Further, the superior court faulted the multiple roles assumed by Assistant Attorney General Douglas Jones, as Board counsel and prosecutor. "Under such circumstanc- es there could not be even the appearance of fairness," the court said. On appeal, Wang relies heavily on these superior court findings for his claim that the Board proceedings were devoid of due process. But the superior court findings are without legal effect since the superior court lacked subject matter jurisdic- tion and its findings were implicitly rejected by the New Hamp- shire Supreme Court decision affirming the Board's final revocation order. 9 would be absolutely immune from suit, in their individual capaci- ties, on section 1983 claims arising out of their respective judicial, quasi-judicial and/or prosecutorial functions, even though they acted "maliciously and corruptly." Pierson v. Ray, _______ ___ 386 U.S. 547, 554 (1967); Imbler v. Pachtman, 424 U.S. 409, 424 ______ ________ (1976) (extending absolute immunity under section 1983 to prose- cutors acting in quasi-judicial capacity). Nor does Wang claim that his medical license was revoked by the Board in the "clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, _____ ________ 357 (1978) (quoting Bradley v. Fisher, 80 U.S. (13 Wall.) 335, _______ ______ 351 (1871)); see also Ricci v. Key Bancshares of Maine, Inc., 768 ___ ____ _____ _____________________________ F.2d 456, 462 (1st Cir. 1985) ("The conduct in question need only be more or less connected to 'the general matters committed by law to [the Board's] control or supervision' and not 'manifestly or palpably beyond [the Board's] authority.'") (quoting Spalding ________ v. Vilas, 161 U.S. 483, 498 (1896)).  _____ Lastly, Wang contends that absolute immunity cannot insulate Board members and its counsel from suit, since the challenged disciplinary action was taken pursuant to a New Hampshire reciprocal revocation statute, see N.H. Rev. Stat. Ann. ___ 329:17-c (1984), unconstitutional on its face. He reasons that though our decision in Bettencourt might support absolute immuni- ___________ ty for medical board members and its counsel, provided their actions were taken under adequate procedural safeguards, Bettencourt does not immunize such officials from suit in their ___________ individual capacities for official actions summarily taken under 10 a reciprocal revocation statute simply on the ground that another jurisdiction has revoked the respondent's license. We decline the invitation to provide an advisory opinion on a claim for which there is no evidentiary support in the appellate record. See United States Nat'l Bank of Or. v. ___ _________________________________ Independent Ins. Agents of Am., Inc., 113 S. Ct. 2173, 2178 _______________________________________ (1993) ("'The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy,' and 'a federal court [lacks] the power to render advisory opinions.'") (citations omitted); State of R.I. v. Narragansett _____________ ____________ Indian Tribe, 19 F.3d 685, 705 (1st Cir.), cert. denied, 115 S. ____________ _____ ______ Ct. 298 (1994) (same). Wang concedes that the final license revocation order issued by the New Hampshire Board was not the ___ product of a summary proceeding. Considering that almost three years elapsed between the commencement of the disciplinary investigation and the entry of the revocation order, we believe the concession is well founded. Moreover, the Board conducted several hearings at which Wang and his attorney appeared; the proceedings were transcribed; the Board issued a written deci- sion; and Wang was afforded and utilized to the fullest the right to appeal the final Board order to the New Hampshire Supreme Court. We find no basis in fact or law for the claim that the procedural safeguards accorded Wang by the New Hampshire Board differed in any significant respect from those the Massa- chusetts Board afforded the respondent in Bettencourt. See 904 ___________ ___ F.2d at 783.  11 B. Injunctive Relief  B. Injunctive Relief _________________ Finally, Wang challenges the summary judgment entered against him on the claim for permanent injunctive relief against the Board.6 In particular, he attacks the federal district court ruling that this claim is "inextricably intertwined" with the New Hampshire Supreme Court decision disallowing his appeal from the New Hampshire Board's license revocation order and, consequently, that the district court lacked subject matter jurisdiction to enjoin the present claim. See Rooker v. Fidelity ___ ______ ________ Trust Co., 263 U.S. 413, 416 (1923); District of Columbia Court _________ ___________________________ of Appeals v. Feldman, 460 U.S. 462, 476 (1983). Wang argued to __________ _______ the New Hampshire Supreme Court that the procedure by which his medical license was revoked failed to afford him due process of law. The New Hampshire Supreme Court rejected his claim, and its decision was reviewable only by the United States Supreme Court. See Feldman, 460 U.S. at 482. ___ _______ Wang frivolously argues, nonetheless, that the Rooker- ______ Feldman doctrine does not bar the constitutional claims asserted _______ below in support of his request for permanent injunctive relief against further disciplinary proceedings by the Board, because unlike the plaintiffs in Feldman, there is no other forum avail- _______ able to him. He is wrong.  ____________________ 6Summary judgment rulings are reviewed de novo to determine __ ____ whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Simon v. FDIC, 48 F.3d 53, 56 (1st Cir. 1995). _____ ____ 12 Wang raised the due process claim before the New Hampshire Supreme Court, albeit unsuccessfully, and may not obtain review of its decision in federal district court on any pretext. Schneider v. Colegio de Abogados de P.R., 917 F.2d 620, _________ ___________________________ 628 (1st Cir. 1990) ("[L]ower federal courts have no jurisdiction to hear appeals from state court decisions, even if the state ____ __ judgment is challenged as unconstitutional."), cert. denied, 502 _____ ______ U.S. 1029 (1992) (emphasis added). Constitutional claims pre- sented to a United States district court, and found to be "inex- tricably intertwined" with state court proceedings, impermissibly invite the federal district court, "in essence," to review a final state court decision. Feldman, 460 U.S. at 483 n.16. _______ Lower federal courts are without subject matter jurisdiction to sit in direct review of state court decisions. Id. (citing ___ Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs, ____________________________ ________________________________ 398 U.S. 281, 296 (1970)).  III III CONCLUSION CONCLUSION __________ The district court judgment dismissing all claims must be affirmed.  Affirmed. Affirmed. ________ 13