David Wilson v. Shumway, et al.　　　CV-97-099-B　　05/08/00
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


<u>**David Wilson**</u>

　　**v.**　　　　　　　　　　　　　　　Civil No. 97-099-B
　　　　　　　　　　　　　　　　　　Opinion No. 2000 DNH 109
<u>**Donald Shumway, et al.**</u>



<u>**MEMORANDUM AND ORDER**</u>


　　David Wilson suffers from a mental illness that his physicians are currently treating with anti-psychotic medications.  Although Wilson's court-appointed guardian has consented to the treatment on his behalf, Wilson seeks to enjoin the treatment on the ground that the guardian's consent is ineffective and the administration of medication without his consent violates his rights under the Americans With Disabilities Act ("ADA") and the First, Fourth, Fifth, Eighth, and Ninth Amendments to the United States Constitution.  Defendants respond by arguing that the court lacks subject matter jurisdiction to consider the case because, in effect, Wilson is attempting to

appeal adverse rulings in the state guardianship proceeding.

See, e.g., District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

## I.

Wilson commenced this action by filing a pro se complaint on or about March 20, 1997. See Compl. (Doc. #6). On May 5, 1997, defendants filed a petition in the Belknap County Probate Court requesting the appointment of a guardian. See Defs.' Mot. for Summ. J. (Doc. #57), Exs. E, F. Shortly thereafter, the Probate Court granted defendants' request and expressly empowered the guardian to consent to medical treatment on Wilson's behalf. See In Re Guardianship of David Wilson, Docket No. 1997-0171, Order dated May 19, 1997.

On December 23, 1997, attorney Ronald Lospennato of the Disabilities Rights Center, Inc., acting on Wilson's behalf, filed a petition to terminate Wilson's guardianship. See Defs.' Mot. for Summ. J. (Doc. #57), Ex. A. at 6. He then obtained a

stay of the present action pending a decision on the petition to terminate. See Endorsed Order dated January 2, 1998, granting Assented to Mot. to Stay Proceedings (Doc. #37).

In a pretrial statement filed on Wilson's behalf in the guardianship proceeding, Lospennato asked the court to determine, among other things, "[w]hether an order of guardianship which denies Mr. Wilson his right to refuse psychotropic medication violates the First Amendment, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution" and "[w]hether an order of guardianship which denies Mr. Wilson his right to refuse psychotropic medication discriminates against him on the basis of his mental disability contrary to the Americans With Disabilities Act, 42 U.S.C § 12131-12134." In Re Guardianship of David Wilson, Docket No. 1997-0171, Petitioner's Pretrial Statement, February 20, 1998.

On June 8, 1998, the Probate Judge assigned to the case issued the following findings and rulings on Wilson's petition to terminate guardianship:

-4-

David Wilson was involuntarily admitted to the New Hampshire Hospital on February 6, 1997. By Order of this Court dated May 19, 1997, the Office of Public Guardian was appointed guardian over the person of David Wilson. Mr. Wilson was conditionally discharged from New Hampshire Hospital on November 10, 1998. This conditional discharge has been revoked at least seven times since his discharge for violations including refusal of medication, depression and suicidal ideation. These revocations have resulted in readmission of Mr. Wilson to either New Hampshire Hospital or Cypress Center. The medication refused was haldol, an anti-psychotic medication authorized by his guardian. Dr. Elizabeth Meadow is Mr. Wilson's current psychiatrist and asserts that he suffers from a mental illness, namely schizo-affective disorder. She recommended to the guardian that Mr. Wilson be prescribed anti-psychotic medication. Mr. Wilson refuses to take this medication. Therefore, an injectable form, haldol, was prescribed. Mr. Wilson asserts that he does not suffer from a mental illness. He states that the CIA implanted a fiberoptic system in his brain allegedly because he was the son of John F. Kennedy and Marilyn Monroe. He first sought psychiatric aid in Plymouth, NH a couple of years ago because he was having problems with this fiberoptic system. He feels that he will make millions of dollars from lawsuits that he has filed, a book that he is writing as well as a new form of chewing gum he has developed. He claims that the Haldol slows his thoughts and creativity and causes depression as well as other side-effects. On the other hand, his guardian, psychiatrist and case managers have seen an improvement in Mr. Wilson since the administration of Haldol. His case manager from New Hampshire Hospital stated that she could not formulate a discharge plan

from Mr. Wilson until he had been administered Haldol. His discharge plan prior to the medication was that a presidential limo would pick him up and he would then live in a mansion. After the administration of Haldol, a discharge plan to an apartment in Manchester, NH was achieved. It is clear from the testimony that if this guardianship was terminated, Mr. Wilson would terminate his anti-psychotic medication resulting in his decompensation. Therefore, the Court finds that the Dept. of Health and Human Services has proven beyond a reasonable doubt the following:

> (a) David Wilson continues to be incapacitated.
> (b) Guardianship is necessary as a means of providing for the ward's continuing care, supervision and rehabilitation.
> (c) There are no available alternative resources which are suitable with respect to the ward's welfare, safety and rehabilitation.
> (d) Guardianship is appropriate as the least restrictive form of intervention consistent with the preservation of the ward's civil rights and liberties.

The court further finds that the ward continues to be incapable of exercising . . . the rights enumerated in the Order of this Court dated May 19, 1997. ON THE BASIS OF THE ABOVE FINDINGS, THE COURT MAKES THE FOLLOWING ORDER: The Petition to Terminate Guardianship filed by David Wilson is DENIED.

In Re Guardianship of David Wilson, Docket No. 1997-0171, Order dated June 8, 1998.

Wilson filed a notice of appeal challenging the Probate

Court's order with the New Hampshire Supreme Court.  The court declined to accept the notice of appeal on January 29, 1999.

## II.

It is axiomatic that a federal district court ordinarily lacks subject matter jurisdiction to consider an appeal from a state court proceeding.  See Feldman, 460 U.S. at 476, 482; Rooker, 263 U.S. at 415-16.  Under the statutory scheme establishing federal jurisdiction to consider state court appeals, jurisdiction over such appeals is assigned exclusively to the United States Supreme Court.  See 28 U.S.C. § 1257 (1994); Feldman, 460 U.S. at 476; Rooker, 263 U.S. at 416.  This jurisdictional limitation is known as the Rooker-Feldman doctrine.  See Hill v. Town of Conway, 193 F.3d 33, 34-5 n.1 (1st Cir. 1999).

The Rooker-Feldman doctrine applies only to claims that are "inextricably intertwined" with claims that were adjudicated in a state court proceeding.  See id. at 39.  Relying on this

limitation, Wilson argues that the doctrine is inapplicable here because the claims he seeks to litigate are not sufficiently intertwined with the claims he litigated in the guardianship proceeding. I disagree.

Wilson's primary argument in the probate court was that the guardianship denied him his rights under the Constitution and the ADA to refuse anti-psychotic medication. The Probate Court rejected Wilson's argument when it refused to terminate the guardianship and found that "[g]uardianship is appropriate as the least restrictive form of intervention consistent with the preservation of the ward's civil rights and liberties." In Re Guardianship of David Wilson, Docket No. 1997-0171, Order dated June 8, 1998. I cannot rule in Wilson's favor in the present action without concluding that the probate court erred in refusing to limit the guardian's power to consent to medical treatment on his behalf. Accordingly, the issues Wilson seeks to raise here are "inextricably intertwined" with the issues he litigated in state court. See Penzoil Co. v. Texaco, Inc., 481

U.S. 1, 25 (1987) ("[T]he federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.") (Marshall, J., concurring in judgment).[1]

Wilson also suggests that the Rooker-Feldman doctrine does not apply to claims based on 42 U.S.C. § 1983. Again, I disagree. Wilson cites no authority to support his argument and the First Circuit has repeatedly applied the doctrine to § 1983 claims. See, e.g., Hill, 193 F.3d at 41; Wang v. New Hampshire Bd. of Registration in Med., 55 F.3d 698, 700, 703 (1st Cir. 1995). Accordingly, the Rooker-Feldman doctrine applies and the

---

[1] To the extent that Wilson argues that the Rooker-Feldman doctrine is inapplicable because the probate court lacked the power to rule on the merits of his claims under the Constitution and the ADA, I also find this argument unpersuasive. The probate court plainly had the power and the duty to grant Wilson's request to terminate or limit the scope of the guardianship if it determined that his claims had merit. See N.H. Rev. Stat. Ann. § 464-A:39(I) (West 1992).

court lacks subject matter jurisdiction to rule on Wilson's claims.

I commend the Disability Rights Center for its work on the difficult issues raised by this case.  Because I lack subject matter jurisdiction to consider Wilson's substantive claims, however, I grant the defendants' request to dismiss.[2]

SO ORDERED.

 

_____
Paul Barbadoro
Chief Judge

May 8, 2000

cc:  Ronald Lospennato, Esq.
     Jennifer Gavilando, Esq.
     Amy Davidson, Esq.

---

[2]  Defendants raised their <u>Rooker-Feldman</u> claim in a motion for summary judgment.  <u>See</u> Defs.' Mot. for Summ. J. (Doc. #57).  Because I do not rule on the merits of Wilson's arguments, I dismiss his claims without prejudice rather than awarding defendants judgment as a matter of law.