Betty Ann **MULLINS,** Plaintiff,

v.

**DEPARTMENT OF LABOR,**
et al., Defendants.

Civil No. 08–1422 (ADC).

United States District Court,
D. Puerto Rico.

March 9, 2009.

Erick Morales–Perez, Erick Morales Law Office, Carolina, PR, for Plaintiff.

Marie L. Cortes–Cortes, Carlos E. Lopez–Lopez, Lopez Lopez & Associates, Daniel Angel Vazquez–Diaz, Oficina de Litigios Generales, Departamento de Justicia, San Juan, PR, for Defendants.

**OPINION AND ORDER**

AIDA M. DELGADO–COLON, District Judge.

## I. Introduction

Plaintiff, Betty Ann Mullins ("Mullins" or "plaintiff"), filed this action against her employer, the Commonwealth of Puerto Rico's Department of Labor ("DOL"), and its employees, Ramón Velasco ("Velasco"), the former Secretary of Labor, Sandra Arroyo–Dávila ("Arroyo"), Angel Ferrer–Cruz ("Ferrer"), and Andrés Espinosa ("Espinosa"), in their official and individual capacities, and Madeline Meliá ("Meliá") and José R. Colón ("Colón"), in their individual capacities, ("collectively defendants"). **Docket No. 1.** She alleges disability, age, and gender discrimination and retaliation in her employment. The claims are brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.;* the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.;* the Equal Pay Act, 29 U.S.C. § 206 *et seq.* Plaintiff also invokes pendent jurisdiction of this court for claims under Law 100 of June 30, 1959, P.R. Laws Ann., tit 29, § 146 *et seq.* ("Law 100"); Law 69 of July 6, 1985, P.R. Laws Ann., tit. 29, § 1321 *et seq.* ("Law 69");

Law 44 of July 6, 1985, P.R. Laws Ann., tit. 1, § 501 et seq. ("Law 44"); and Article 1802 of the Commonwealth of P.R. Civil Code, P.R. Laws Ann., tit. 31, § 5141 ("Article 1802").

Before the court is the DOH, Velasco, Arroyo, Ferrer and Espinosa's motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(1)[1] and 12(b)(6). **Docket No. 25.** Meliá and Colón requested to join co-defendant's motion to dismiss. **Docket No. 37.** The court granted said request. **Docket No. 39.** Plaintiff opposes dismissal of the complaint, but concedes on one of defendants' arguments.[2] After due consideration, defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

## II. Factual Background

Unless otherwise indicated, the following relevant allegations are drawn from the complaint filed on April 11, 2008. **Docket No. 1.**

Mullins is of legal age, single, a resident of Carolina, Puerto Rico and works as a mediator of labor conflicts at the DOL. Id. at ¶ 6. The DOL is an instrumentality of the Commonwealth of Puerto Rico. Velasco was the Secretary of the DOH; Ferrer was the Director of the Arbitration and Conciliation Board; Colón performed as the Sub-director of the Arbitration and Conciliation Board and plaintiff's immediate supervisor; Espinosa held the position of Assistant Director of Legal Affairs; Arroyo was the Director of Human Resources; and Meliá was the Assistant Director of the DOL. Id. at ¶¶ 8–13, 16.

Mullins began working at the DOL on September 2, 1988. She has always worked in the same position: Arbitration–Mediation of Labor Conflicts. Id. at ¶ 14. Her duties and responsibilities consist of mediation and arbitration of various kinds of labor conflicts between union employees and employers. Her duties also include adjudicating complaints, issues and conflicts. Other duties include training personnel regarding arbitration and mediation, provide seminars and represent the Director of Mediation and Arbitration in counseling and advising the community at large, and any other duties deemed necessary by said Director or the Secretary of the DOL. Id. at ¶ 15. Mullins' overall performance met and exceeded defendants' expectations. Id. at ¶ 17.

Plaintiff understands she has been continually discriminated against since 2004 due to gender for the following: a) assigning male colleagues, with less experience and less qualifications than plaintiff, to arbitration and mediation proceedings; b) providing male colleagues with superior monetary compensation than plaintiff; and c) providing male colleagues with better professional advancement than those afforded to plaintiff. Id. at ¶ 18. Thus, in spite of Mullins' superior professional performance, defendants gave less qualified male employees higher pay levels for the same responsibilities Mullins had, affecting the terms and conditions of her employment. Id. at ¶¶ 30–31. Further, plaintiff understands that since 2004 and despite her qualifications she was discriminated

---

1. The basis for this request was based on plaintiff's alleged failure to exhaust administrative remedies. Plaintiff's opposition adjoined both the administrative charge before the Anti–Discrimination Unit, alleging continuing violations, and the Equal Employment Opportunity Commission's Notice of Right to Sue letter. Inasmuch as plaintiff presented sufficient evidence at this stage of the proceedings to support that she exhausted administrative remedies, the court will proceed to analyze defendants' dismissal arguments pursuant to Fed.R.Civ.P. 12(b)(6).

2. Defendants moved to dismiss plaintiffs' Title VII, ADA and ADEA's individual liability claims. Plaintiff concedes this point. Accordingly, plaintiff's individual liability claims under Title VII, ADA and ADEA against defendants is **DISMISSED WITH PREJUDICE.**

against due to her age [3]. Plaintiff bases her age discrimination claim on the fact that defendants have: a) hired younger persons than the plaintiff as mediator/arbitrators; b) provided younger persons, with less experience and educational qualifications, higher compensation than plaintiff; c) provided younger employees with better job assignments, as mediator and arbitrator, than those provided to plaintiff, including arbitration cases, conciliation of labor cases, mediation, negotiation, complex arbitration cases, assignment of administrative duties; and d) published more arbitration awards of younger co-workers than plaintiff, in detriment to her professional standing as a mediator *Id.* at ¶¶ 19, 37–38. Plaintiff understands that defendants discriminated against plaintiff on account of her disability for having developed an "emotional condition" due to labor stress and "burn out". Defendants made comments to plaintiff, characterizing her as emotionally affected, unfit, violent, and mentally unsound. They have stated that she should go to "INSPIRA," a mental therapeutic center, to receive psychological treatment. Defendants have mocked plaintiff's character by attributing her a mental illness. According to plaintiff, defendants have made these comments wantonly, maliciously and viciously, causing plaintiff pain, suffering and mental anguish. *Id.* at ¶ 20.

Plaintiff also claims defendants retaliated against her for filing complaints of detrimental working conditions and salary violations with different state and federal agencies, including the complaint before this court. Plaintiff states that defendants have: (a) diminished her professional responsibilities; (b) made disparaging remarks about her professional capabilities and performance in front of her co-workers; and (c) taken unjustifiable disciplinary measures against her. *Id.* at ¶ 21. Notwithstanding, plaintiff alleges that defendants have not taken any affirmative action to remedy the discrimination plaintiff has complained of. *Id.* at ¶ 25. Instead, plaintiff attests that defendants created a hostile work environment, which included threats, negative comments and other improper coercive comments for which Mullins continues to suffer pain, mental anguish, and monetary damages. *Id.* at ¶ 33.

## III. Motion to Dismiss

In considering a motion to dismiss, the court "take[s] as true all well-pleaded allegations and draw[s] all reasonable inferences in the plaintiff's favor." *Ezra Charitable Trust v. Tyco Int'l, Ltd.*, 466 F.3d 1, 5–6 (1st Cir.2006). The claimant, however, "must allege 'a plausible entitlement to relief.'" *Rodríguez–Ortiz v. Margo Caribe, Inc.*, 490 F.3d 92, 95 (1st Cir.2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1967, 167 L.Ed.2d 929 (2007)).[4] "The court need not accept a plaintiff's assertion that a factual allegation satisfies an element of a claim, however, nor must a court infer from the assertion of a legal conclusion that factual

---

**3.** At the time plaintiff was fifty-two (52) years of age.

**4.** The court explicitly backed away from the Rule 12(b)(6) standard articulated in *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*,

127 S.Ct. at 1968 (quoting *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99). The Court stated that: "[A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969.

allegations could be made that would justify drawing such a conclusion." *Cordero–Hernández v. HernándezBallesteros,* 449 F.3d 240, 244 n. 3 (1st Cir.2006).

## IV. Discussion

Defendants move to dismiss the complaint for the following reasons: (i) the DOL, and its employees in their official capacities, are entitled the Eleventh Amendment immunity for the ADA and ADEA claims as well as the Commonwealth law claims; (ii) plaintiff failed to exhaust administrative remedies against defendants for Title VII gender discrimination and failed to state a claim for Title VII retaliation; and (iii) plaintiff's Commonwealth law claims are time-barred. **Docket No. 25.**

### A. Sovereign Immunity

■ The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The principles embodied in the Eleventh Amendment apply to suits against a state by its own citizens. *See Hans v. Louisiana,* 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Metcalf & Eddy, Inc. v. P.R. Aqueduct and Sewer Auth.,* 991 F.2d 935, 938 (1st Cir.1993) *(citing Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)).[5]

■ The Eleventh Amendment bars monetary damages claims against the state itself, its agencies and instrumentalities that are an arm or "alter ego" of the state, as well as their employees, in their official capacity. *See Will v. Michigan Dep't of*

*State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Mt. Healthy City School District v. Doyle,* 429 U.S. 274 280–281, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Wang v. New Hampshire Bd. of Registration in Med.,* 55 F.3d 698, 700 (1st Cir.1995). Claims filed against state officials in their official capacity are deemed actions against the state since the real party in interest is the State and not the official. *Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

■ The Commonwealth of Puerto Rico and its dependencies have not waived their Eleventh Amendment immunity to be sued for damages in federal court under the ADA and the ADEA. P.R. Stat. Ann., tit. 32, § 3077. Further, the Supreme Court has held that Congress did not abrogate or override the State's Eleventh Amendment immunity by enacting this legislation. This immunity is subject to two salient limitations: (1) a State may waive its immunity and consent to be sued in federal court, *see, e.g., Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985); and (2) Congress may abrogate the States' sovereign immunity by passing legislation pursuant to a valid exercise of its power to enforce the rights guaranteed by the Fourteenth Amendment, *see, e.g., Seminole Tribe v. Florida,* 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

In *Seminole Tribe,* the Supreme Court set forth a two-part test for determining whether an act of Congress validly abrogates States' sovereign immunity: Congress must (1) "unequivocally express[ ] its intent to abrogate the immunity," 517 U.S. at 55, 116 S.Ct. 1114 (internal quotation

---

**5.** The Commonwealth of Puerto Rico is considered a state for Eleventh Amendment pur-

poses. *See De León López v. Corp. Insular de Seguros,* 931 F.2d 116, 121 (1st Cir.1991).

marks omitted) and (2) act "pursuant to a constitutional provision granting [it] the power to abrogate," *id.* at 59. As to the second prong, recent Supreme Court precedent has clarified that Congress may not abrogate State sovereign immunity pursuant to its Article I powers, although it may pursuant to Section 5 of the Fourteenth Amendment.[6] *See Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank,* 527 U.S. 627, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999). The court will view defendants' assertions of sovereign immunity under the ADA and ADEA, in turn.

### (i) American with Disabilities Act (ADA)

Applying the standards above, in *Bd. of Trustees of the Univ. of Alabama v. Garrett,* 531 U.S. 356, 368–74, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), the Supreme Court reasoned that Congress had failed to identify a "history and pattern of unconstitutional employment discrimination by the States against the disabled" sufficient for the ADA to be considered as validly enacted under Section 5 of the Fourteenth Amendment. Therefore, the Court invalidated Congress's abrogation to the States' Eleventh Amendment immunity under Title I of the ADA. Consequently, the Court found that Title I of the ADA does not authorize suits seeking money damages by private individuals against states. *See also Torres–Alamo v. Puerto Rico,* 502 F.3d 20, 24 (1st Cir.2007). However, this immunity is not absolute.

Under the *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) doctrine, the Supreme Court carved out an exception to Eleventh Amendment state immunity that allows federal courts to "enjoin state officials to conform their future conduct to the requirements of federal law," *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *see also Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985); *Edelman v. Jordan,* 415 U.S. 651, 664, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The difference between permissible and impermissible relief is "the difference between prospective relief on one hand and retrospective relief on the other." *Quern,* 440 U.S. at 337, 99 S.Ct. 1139. Accordingly, plaintiff may continue to pursue her claims for injunctive and equitable relief. *Ramirez v. Oklahoma Dept. of Mental Health,* 41 F.3d 584 (10th Cir.1994)(a complaint against the Department of Mental Health seeking equitable relief of reinstatement to the employees' former positions was not barred by the Eleventh Amendment).

In light of the above, defendants' motion to dismiss based on Eleventh Amendment immunity is granted in part. Plaintiff's monetary damages claims against the DOL and its employees, in their official capacity, is hereby dismissed with prejudice; her claims seeking injunctive and equitable relief against defendants remain.

### (ii) Age Discrimination in Employment Act (ADEA)

Similar to *Garrett's* reasoning, the Supreme Court, in *Kimel v. Bd. of Regents,* 528 U.S. 62, 91, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), held that Congress did not validly abrogate the States' sovereign immunity to suits by private individuals. The Court reasoned that the ADEA is not legislation authorized by Section 5 of the Fourteenth Amendment, thus a private litigant seeking money damages cannot defeat the State's Eleventh Amend-

---

**6.** Section 5 of the Fourteenth Amendment states: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. Amend. XIV, § 5.

ment immunity. The Court distinguished its holding in *EEOC v. Wyoming*, 460 U.S. 226, 243, 103 S.Ct. 1054, 75 L.Ed.2d 18 (1983), that the ADEA constitutes a valid exercise of Congress' Article I Commerce Clause power. The Court found that Congress' powers under Article I do not include the power to subject States to suit at the hands of private individuals. *Id.* at 635. In light of *Kimel*, plaintiff's monetary damages claims under the ADEA against the defendants in their official capacity is dismissed with prejudice. However, her request for injunctive relief against the defendants under said statute remains. *See Seminole Tribe*, 517 U.S. at 49 n. 14, 116 S.Ct. 1114 ("[A]n individual can bring suit against a state officer in order to ensure that the officer's conduct is in compliance with federal law.").

### (iii) Immunity from Commonwealth Law Claims

Defendants, in their official capacity, argue that the Commonwealth has not consented to being sued in this court under these statutes. The court agrees. Regarding the Commonwealth's waiver of sovereign immunity in certain cases, the First Circuit has held that the fact that a state has waived its immunity to be sued does not automatically mean that it waived its immunity in federal court. *See Díaz–Fonseca v. Commonwealth of Puerto Rico*, 451 F.3d 13, 33 (1st Cir.2006)(holding that although the Commonwealth waived its immunity to be sued in certain circumstances in its own courts, it did not waive its immunity to be sued in federal court). Plaintiff has not opposed defendants' arguments in this regard. As such, plaintiff has failed to establish that any of the exceptions to the immunity are present in this case. Thus, plaintiff's claims against the DOL and defendants in their official capacity, pursuant to Commonwealth law, is dismissed without prejudice.

### B. Title VII—Failure to Exhaust Administrative Remedies and Failure to State a Claim

Defendants contend that the court should dismiss plaintiff's Title VII claims for failure to exhaust the statutorily required administrative remedies prior to filing the instant action and because the same are time-barred. They also contend that the court should dismiss plaintiff's Title VII retaliation claims for failure to state a claim. The court disagrees with both assertions.

### (i) Failure to Exhaust

Title VII mandates that all plaintiff's comply "with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e." *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 277 (1st Cir.1999). Accordingly, "such compliance must occur before a federal court may entertain a suit that seeks recovery for an alleged [Title VII] violation." *Id.* Therefore, pursuant to Title VII, an aggrieved party must file its charge with the E.E.O.C. within one hundred and eighty (180) days of the alleged discriminatory conduct or within three hundred (300) days if "the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice." 42 U.S.C. § 2000e–5(e)(1). However, the continuing violation doctrine, "creates an equitable exception to the 300–[180–] day limitation when the unlawful behavior is deemed ongoing." *Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir.1998).

The First Circuit has identified continuing violations as "serial or systemic" and has distinguished them. *Id.* "Systemic violations occur where an employer maintains a discriminatory policy, responsible for multiple discriminatory acts that

fall outside the limitations period." *Rivera–Rodríguez v. Frito Lay Snacks Caribbean,* 265 F.3d 15, 21 (1st Cir.2001) (citing *Pilgrim v. Trustees of Tufts College,* 118 F.3d 864, 869 (1st Cir.1997)). A serial violation occurs when "the plaintiff experiences a number of discriminatory acts arising from the same discriminatory animus." *Id.* at 22.

■ In the instant case, plaintiff avers that she filed her charge with the local Anti–Discrimination Unit on August 22, 2007, and filed a timely complaint after receiving her notice of right to sue from the E.E.O.C. **Docket No. 36,** at 5. Although plaintiff alleges that the discrimination began on 2004, her allegations make general references to incidents that, taken as a whole and in plaintiff's understanding, amount to age, gender and disability discrimination that are continuous and created a hostile work environment.[7] **Docket No. 1,** at ¶¶ 18, 19, 20, 21, 26, 32, 43. Further, plaintiff's administrative charge marks the discrimination alleged as a "continuing action." **Docket No. 36–3.**

■ At this juncture, the court is unable to conclude whether the allegations hold any discrete acts,[8] for which defendants' time-barred arguments may be more persuasive. Therefore, taking plaintiff's allegations as true—as we must at this stage—plaintiff's have successfully exhausted the administrative prerequisites and have plead a "continuing violation" for otherwise time-barred acts. Accordingly, defendants' request for dismissal of plaintiff's Title VII claims is denied. Notwithstanding, defendants may revisit these arguments in a motion for summary judgment, if appropriate, once a more detailed factual record and time-frame is developed.

### (ii) Failure to State a Title VII Retaliation Claim[9]

■ Defendants assert that plaintiff has failed to state a Title VII retaliation claim. The court disagrees. Again, at present, the court must view whether the four corners of the complaint hold a plausible entitlement to relief for retaliation under Title VII. A perusal of the com-

7. In *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 115, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court held that hostile work environment claims are different in kind from discrete acts. The Court reasoned that, since their very nature involves repeated conduct, the acts tend to occur over a series of days or perhaps years. Thus, in order to determining whether an actionable hostile environment claim exists, the courts must examine all the surrounding circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Consequently, the Court found that since hostile environment claims are composed of a series of separate acts that collectively constitute an "unlawful employment practice," it does not matter that some of the component acts fall outside the statutory time period, provided that at least one of the acts occur within the filing period.

8. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.' [The Plaintiff] can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." *Morgan,* 536 U.S. at 114, 122 S.Ct. 2061 (emphasis added). As such, "only incidents that took place within the timely filing period are actionable." *Id.*

9. Although defendants' motion also seeks dismissal for failure to state a claim under section 1981, 42 U.S.C. § 1981, plaintiff only requests relief under the statute's damages provision, section 1981a(a)(1). Therefore, the court will not address these dismissal arguments.

plaint suffices to note that she has. Plaintiff alleges she filed charges before local and federal administrative agencies to complain of the defendants' alleged discriminatory acts. Then, she claims to have suffered unjustified disciplinary actions, defendants have made disparaging remarks against her in front of her co-workers and that defendants affected the terms and conditions of her employment. **Docket No. 1** at ¶¶ 21, 32. These allegations make out a plausible Title VII retaliation claim.

Equally unavailing is the fact that defendants have applied summary judgment standards and case law to support their request to dismiss the Title VII retaliation. In light of the above, defendants' request for dismissal for failure to state a Title VII retaliation claim is denied.

### C. Commonwealth Actions

 Since Defendants' official capacity claims have already been disposed of, what remains are the individual liability claims under Commonwealth law. Defendants contend that plaintiff's Commonwealth law actions are time-barred. The court disagrees. First, as stated above, plaintiff has alleged continual violations. Much like the federal case law cited above, these actions are viewed as a conglomerate. The Commonwealth Supreme Court has defined continuing damages as:

> those caused by one or more culpable or negligent acts imputable to the actor, coetaneous or otherwise, that result in uninterrupted, sustained, lasting, inter-linked harmful consequences, which, when known, also reveal—as foresee-able—the continuous, uninterrupted character of its effects, turning at that moment into a real damage, composed of elements of actual damage (that which has already occurred) and of future damage that is foreseeable and, therefore, real.

*Cruz Vargas v. R.J. Reynolds Tobacco Co.,* 218 F.Supp.2d 109, 115 (2002)(citing *Galib Frangie v. El Vocero de P.R.,* 138 P.R. Dec. 560, 575 (1995)). Thus, continuing damages involve tortious acts that have uninterrupted and interlinked consequences. Accordingly, the statute of limitations in these cases begins to run from the moment the aggrieved knows she is suffering and can foresee that said consequences will continue in the future. *See also Santiago Rivera v. Ríos Alonso,* 156 P.R. Dec. 181, 2002 TSPR 15 (2002).

In addition, under Commonwealth law, the "[p]rescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." P.R. Laws Ann., tit 31, § 5303. The Supreme Court of Puerto Rico has held that an administrative action must be essentially "identical" to the subsequent court action in order for this tolling rule to apply. *Cintrón v. Estado Libre Asociado de P.R.,* 127 P.R. Dec. 582, 1990 WL 658719 (1990); *see Rodríguez–García v. Municipality of Caguas,* 354 F.3d 91, 97 (1st Cir.2004). Considering the administrative charge identified identical claims of gender, age and disability discrimination as well as retaliation (**Docket No. 36–3**), the filing of said charge tolled the statute of limitations regarding these claims under Commonwealth law.

### V. Conclusion

Based upon the foregoing, defendants' motion to dismiss (**Docket No. 25**) is **GRANTED** in part and **DENIED** in part as follows:

A. Defendants' motion to dismiss plaintiff's Title VII, ADA and ADEA claim in each of defendants' individual capacity is **GRANTED** and the individual liability claims against de-

fendants is **DISMISSED WITH PREJUDICE.**

B. Defendant's motion to dismiss defendants' ADA and ADEA monetary damages claims based on Sovereign Immunity is **GRANTED;** and monetary damages claims under these statutes are **DISMISSED WITH PREJUDICE.** However, plaintiff's request for injunctive relief under these statutes remain.

C. Defendants' motion to dismiss plaintiff's Commonwealth law claims based on Sovereign Immunity is **GRANTED;** defendants' official capacity claims under Commonwealth law are **DISMISSED WITHOUT PREJUDICE.**

D. Defendants' motion to dismiss plaintiff's Title VII claims is **DENIED;**

E. Defendants' motion to dismiss individual liability claims under Commonwealth law is **DENIED;**

**SO ORDERED.**